Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,979-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

GREGTAZONE BURKS                          Appellant

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Jackson, Louisiana
Trial Court No. 53,292

Honorable William R. "Rick" Warren, Judge

* * * * *

LOUISIANA APPEALS AND WRIT SERVICE    Counsel for Appellant
By: Desiree M. Valenti


DANIEL W. NEWELL                          Counsel for Appellee
District Attorney

PERRIN NELSON SMITH, JR.
Assistant District Attorney

* * * * *


Before PITMAN, STONE, and HUNTER, JJ.

**STONE, J.**

This criminal appeal arises from the Second Judicial District Court, Honorable Judge Rick Warren presiding. The defendant-appellant is Gregtazone Burks (the "defendant"). On January 24, 2024, a grand jury indicted the defendant with charges of: (1) second degree murder, La. R.S. 14:30.1; (2) aggravated kidnapping, La. R.S. 14:44; and (3) home invasion, La. R.S. 14:62.8. On August 18, 2025, he pled guilty to second degree kidnapping and home invasion in exchange for the state dropping the second degree murder charge, reducing the kidnapping charge from aggravated to second degree, and promising not to multi-bill the defendant pursuant to La. R.S. 15:529.1. Sentencing was left to the court's discretion. On November 4, 2025, the court sentenced defendant to concurrent sentences of 40 years on the kidnapping charge and 30 years on the home invasion charge; these sentences are the statutory maximum for both crimes. La. R.S. 14:44.1 and 14:62.8. On appeal, the defendant contends that his sentence is constitutionally excessive. For the reasons stated herein, we affirm the defendant's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

The defendant and his two accomplices saw their victim, O'Ryon Atkins ("Atkins"), flaunting cash on social media and plotted to rob him of it at his home. The operation did not go well. During the late-night hours of October 17, 2023, two members of the trio, both armed with firearms, invaded Atkins's home – while he, his girlfriend, Allison Wells ("Ms. Wells"), and children were present. When Atkins did not hand over the cash, they shot him to death in the front yard. Then – because they still did not have the coveted loot – the defendant kidnapped Ms. Wells at gunpoint and

tried to force her into a car and coerce her to show them where the money was hidden. Meanwhile, police arrived in response to the multiple gunshots, which caused the criminal trio to scatter on foot and drop at least one of their firearms. All three have since been arrested and have pled guilty, including Gregtazone Burks, the defendant herein. He was not arrested until nearly six weeks after the instant offenses.

After receiving the defendant's plea of guilty to kidnapping and home invasion (which the defendant gave in exchange for the prosecution waiving the murder charge and habitual offender enhancement), the trial court ordered a presentence investigation ("PSI"). The defendant, born May 18, 2004, was only 19 years old at the time he committed these crimes. However, he already had an extensive RAP[1] sheet before he committed the instant crimes, including at least two multiple-felony arrests: (1) August 17, 2022, aggravated assault with a firearm and illegal carrying of weapons; (2) February 7, 2023, violation of uniform controlled dangerous substance law and possession of CDS on school property and remaining after being forbidden; (3) On July 5, 2023, possession of Schedule I, less than two and a half pounds; illegal carrying of a weapon while in possession of CDS and possession of Schedule II with intent to distribute less than 28 grams.

On September 13th, 2023, the defendant pled guilty to the felony of attempted illegal carrying of a weapon while in possession of CDS and was sentenced to serve three years at hard labor, suspended, with three years of supervised probation. The defendant's felony probation began on September 13, 2023, and less than a month later, he committed the instant offenses.

---

[1] The acronym stands for record of arrests and prosecutions.

2

## LAW

Here we examine the definitions and penalties of the crimes with which the defendant was charged and of those to which he pled guilty pursuant to the plea deal. Then we turn to constitutional limitations on sentencing.

**Principals; second degree murder.** "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. R.S. 14:24.

Second degree murder includes killing a human being: (1) with the specific intent to kill or cause great bodily harm; and/or (2) when the offender is engaged in the perpetration or attempted perpetration of any grade of the offense of robbery. La. R.S. 14:30.1. The punishment for this offense is mandatory lifetime incarceration. *Id.* The defendant was initially charged with this offense but pursuant to the plea agreement the prosecution waived this charge.

"Under the law of principals, a person may be convicted of…[second degree murder] even if he has not personally fired the fatal shot." *State v. Jones*, 49,830 (La. App. 2 Cir. 5/20/15), 166 So. 3d 406, *writ not cons.*, 15-1524 (La. 3/14/16), 188 So. 3d 1061. Likewise, it is unnecessary to have specific intent to kill or inflict great bodily harm to be a principal to second degree felony murder. *State v. Gurganus,* 03-992 (La. App. 5 Cir. 12/30/03), 864 So.2d 771, 775, *writ denied,* 04-0254 (La. 6/4/04), 876 So.2d 75. Rather, under the felony murder doctrine, the state need only prove the commission of the underlying felony or the attempt thereof. *State v.*

3

*Southall*, 22-0746 (La. App. 1 Cir. 6/2/23), 369 So. 3d 925, *writ denied,* 23-00875 (La. 2/6/24), 378 So. 3d 750.

**Kidnapping.** Aggravated kidnapping includes "the forcible seizing and carrying of any person from one place to another…with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value…in order to secure a release of the person under the offender's actual or apparent control." La. R.S. 14:44. This crime also carries a sentence of mandatory lifetime incarceration. The prosecution reduced this charge to second degree kidnapping as part of the plea deal.

Second degree kidnapping carries a penalty range of 5 to 40 years of imprisonment at hard labor; at least 2 of those years must be served without possibility of parole. La. R.S. 14:44.1(C).

**Home invasion.** Home invasion includes "the unauthorized entering of any inhabited dwelling…where a person is present, with the intent to use force or violence upon the person of another." La. R.S. 14:62.8. The sentencing range for this crime is 1 to 30 years of incarceration at hard labor.

**Habitual Offender Law.** The defendant, as a second felony offender, would have been exposed to an 80-year maximum sentence for second degree kidnapping and a 60-year maximum for home invasion. La. R.S. 15:529.1(A)(1). The plea deal eliminated these risks for the defendant.

**Excessive sentence.** La. Const. art. I, § 20 provides: "No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment."

A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a

purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bell*, 53,712 (La. App. 2 Cir. 1/13/21), 310 So. 3d 307. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the (appellate court's) sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166.

The trial court has wide discretion in the imposition of sentences within the statutory limits and such sentences should not be set aside as excessive in the absence of a manifest abuse of that discretion. *State v. Trotter*, 54,496 (La. App. 2 Cir. 6/29/22), 342 So. 3d 1116. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Bell*, *supra*.

## ANALYSIS

The defense argues that the defendant's effective 40-year sentence is a violation of his constitutional rights because: (1) he is young; (2) he grew up without a father; (3) he dropped out of school after the eighth grade; (4) his brother was murdered; and (5) he is the biological father of two one-year-old children with different mothers; (6) he expressed remorse at sentencing; and (7) the trial court "failed to consider the likelihood of rehabilitation."

In so arguing, the defense brief fails to account for the fact that the defendant and his principals (joint venturers) *murdered* O'Ryon Atkins – and the defendant was originally so charged. The penalty for second degree murder is a mandatory life sentence. If the defendant was not the shooter who killed Atkins, he is, nonetheless, guilty as a principal under the felony murder doctrine – and, thus, still would owe a life sentence according to our

law. As part of the plea deal, the prosecution waived this charge. Likewise, the original charge of aggravated kidnapping carries a mandatory life sentence. The prosecution also waived this in exchange for the defendant's plea to the lesser charge of second degree kidnapping, which has a 30-year maximum sentence.

The defendant is also a second-time felon subject to enhanced sentencing under the Habitual Offender Law. The prosecution was quite gracious in waiving the murder charge, the aggravated kidnapping charge, and the habitual offender enhancement and agreeing to leave sentencing to the court. The defendant received a substantial and unmerited benefit from his plea deal. He is among the worst of home invaders and kidnappers –i.e., those who murder their victims.

Finally, we point out the fallacies in the defense argument's list of factors claimed to make the sentence unconstitutional. The defendant, at age 19, knew plenty well that murder, home invasion, and kidnapping are major crimes and are morally detestable. The defendant's lack of a father may have contributed to his pathological behavior; regardless, however, he has free will and is responsible for his own decisions. Certainly, there are multitudes of people raised without a father who never commit violent felonies, to say the very least. The defendant – given the opportunity for a publicly-funded education – chose to drop out of school in the eighth grade. The defendant created two babies with two different mothers *while pursuing his criminal endeavors* as outlined in the PSI, then escalated from getting caught with drugs and guns to murdering someone for cash – while he could and should have been acting responsibly for his two babies. This suggests indifference toward his duty as a father. Perhaps even more to the point,

6

O'Ryon Atkins had children as well – in fact, they were in the house when the defendant and his accomplices conducted their armed invasion, murder, and kidnapping. Because of the defendant, those children have no chance of having their father providing for or protecting them, or ever seeing their father again. O'Ryon Atkins's family will, collectively, suffer from his death for far more than 40 years. The defendant's expression of remorse came only after he was caught (i.e., after six weeks in hiding). If the defendant was truly remorseful at sentencing, was it because he knew he had committed heinous crimes, or because he would have to face the consequences? His conduct after the offense suggests the latter. The murder of the defendant's brother would seem to cause him to have a deep and personal understanding of the pain that the family of a murder victim suffers. Even that, apparently, did not sufficiently matter to the defendant when he made his choices in committing the instant offenses.

As to the defendant's "likelihood of rehabilitation" – such must be weighed against the substantial risk that he will commit more murders, violent crimes, and/or drug trafficking if released earlier. Moreover, there are no particular facts in the record suggesting that the defendant's individual likelihood of reform is more than a theoretical possibility. The defendant's disregard for the sanctity of human life – including the safety of O'Ryon Atkins's children – shows a dangerous capacity that makes it unsafe to entrust the defendant with further opportunity to harm people. The sentences are not excessive and are adequately supported by the record.

## CONCLUSION

For the reasons stated herein, we **AFFIRM** the defendant's convictions and sentences.

**AFFIRMED.**